JOAN B. TUCKER FIFE (SBN: 144572)
    email: jfife@winston.com
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111
Telephone:   415-591-1000
Facsimile:   415-591-1400

MARIA C. RODRIGUEZ (SBN: 194201)
    email: mcrodriguez@winston.com
EMILIE C. WOODHEAD (SBN: 240464)
    email: ewoodhead@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543
Telephone:   213-615-1700
Facsimile:   213-615-1750

Attorneys for Defendants
U.S. BANK NATIONAL ASSOCIATION
and U.S. BANCORP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON J. SPAINHOWER, an individual, on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>U.S. BANK National Association, a Delaware Corporation,<br><br>          Defendants.<br><br>L. MICHAEL WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>U.S. BANCORP dba U.S. BANK, a Delaware corporation.<br><br>          Defendant. | **Case No. CV08-00137 JHN (PJWx)**<br><br>Consolidated with Case No. **CV08-08645 JHN (PJWx)**<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>**Honorable Jacqueline H. Nguyen**<br>Ctrm:  1600<br>Date:   March 15, 2010<br>Time: 9:30 a.m. |

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ..................................................................................... 1

II.  OVERVIEW OF THE EXEMPTIONS.............................................. 2

    A.   Executive Exemption ......................................................... 2

    B.   Administrative Exemption ............................................... 4

    C.   Outside Sales Exemption ................................................. 4

III. STATEMENT OF FACTS .................................................................. 5

    A.   Branch Managers Are Responsible for Managing Their Branch.............. 5

    B.   Plaintiffs and Their Witnesses Admit They Performed Exempt Work. ................................................................................. 8

    C.   Time Spent on Exempt Functions Varies............................. 9

    D.   U.S. Bank Expects that Branch Managers Spend the Majority of Their Time Performing Exempt Work. ................ 10

    E.   "Staffing Documents" Do Not Dictate or Express Any Expectation that Branch Managers Perform 50% or More Non-Exempt Work. ......... 10

    F.   Branch Managers are Provided with Meal and Rest Periods.................. 13

    G.   Plaintiffs Spainhower and Williams........................................ 13

IV.  ARGUMENT .......................................................................................... 14

    A.   Plaintiffs Must Prove that a Class Can Be Certified. ................ 14

    B.   Individual Issues Predominate and a Class Action is Not Superior......... 14

        1.   Whether the Managerial, Administrative, or Outside Sales Exemptions Apply is a Fact-Intensive Inquiry and Individual Issues Predominate Over Common Questions. ........... 15

        2.   Plaintiffs' "Expectations" Arguments Are Not Sufficient............ 18

            a.   U.S. Bank Expects Branch Managers to Spend the Majority of their Time Performing Exempt Duties............. 19

            b.   Regardless of an Employer's Expectations, if Employees Spend More than 50% of Their Time on Exempt Tasks, They are Exempt.......................... 19

            c.   The "Staffing Documents" Are Not a Uniform Policy. ...... 20

i

        d.     The Court Should Not Disregard Evidence of Individualized Issues. ..................................21

   3.    Neither a Meal Period Class nor a Rest Period Class Can Be Certified Because Individual Inquiries Predominate. ....................22

   4.    Plaintiffs Cannot Demonstrate Superiority under Rule 23(b)(3). ...................................................................................23

C.    Plaintiffs Fail to Satisfy the Commonality and Typicality Requirements........................................................................24

V.    CONCLUSION .............................................................................. 25

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION    CV08-00137 JHN (PJWx)

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................14

*Arnold v. United Artists Theatre Circuit, Inc.,*
    158 F.R.D. 439 (N.D. Cal. 1994)...............................................24

*Bell v. Farmers Ins. Exchange,*
    87 Cal.App.4th 805 (2001) ....................................................2, 18

*Bennett v. Progressive Corp.,*
    225 F. Supp. 2d 190 (N.D.N.Y. 2002)..........................................4

*Blackwell v. Skywest Airlines, Inc.,*
    245 F.R.D. 453 (S.D. Cal. 2007) ...............................................23

*Brown v.FedEx Corp.,*
    249 F.R.D. 580,587 (C.D. Cal. 2008)........................................23

*Budrow v. Dave & Buster's of California, Inc.,*
    171 Cal.App.4th 875 (2009) .....................................................19

*Donovan v. Burger King Corp.,*
    672 F.2d 221 (1st Cir. 1982)........................................................3

*Dunbar v. Albertson's,*
    141 Cal.App.4th 1422 (2006) ....................................................16

*Gen. Tel. Co. of the Sw. v. Falcon,*
    457 U.S. 147 (1982)..................................................................24

*In re Wells Fargo Home Mortgage Overtime Litig.,*
    2010 WL 174329 (N.D. Cal. Jan. 13, 2010).........................passim

*In re Wells Fargo Home Mortgage Overtime Litigation,*
    571 F.3d 953 (9th Cir. 2009) ...............................................15, 21

*Jimenez v. Domino's Pizza,*
    238 F.R.D. 241 (C.D. Cal. 2006)...........................................15, 24

*Jordan v. County of Los Angeles,*
    669 F.2d 1311 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982)........24

iii

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

*Keller v. Tuesday Morning,*
   179 Cal.App.4th 1389 (2009) ...................................................................15

*Kenny v. Supercuts, Inc.,*
   252 F.R.D. 641 (N.D. Cal. 2008)............................................................23

*Lanzarone v. Guardsmark,*
   2006 WL 4393465 (C.D. Cal. Sept. 7, 2006) .....................................23

*Lolley v. Campbell,*
   28 Cal.4th 367 (2002) ...............................................................................24

*Mendoza v. Home Depot, U.S.A., Inc.,*
   No. CV 09-058343 SJO ...................................................15, 18, 20, 23

*Perry v. U.S. Bank,*
   2001 WL 34920473 (N.D. Cal. Oct. 16, 2001) ................................15

*Pfohl v. Farmers Ins. Group,*
   2004 WL 554834 (C.D. Cal. Mar. 1, 2004)......................................15

*Ramirez v. Yosemite Water,*
   20 Cal.4th 785 (1999) .........................................................................3, 19

*Sanchez v. Wal Mart Stores, Inc.,*
   2009 WL 1514435 (E.D. Cal. May 28, 2009) ..................................25

*Vinole v. Countrywide Home Loan, Inc.,*
   571 F.3d 935 (9th Cir. 2009) ...........................................................14, 15

*Walsh v. Ikon Office Solutions, Inc.,*
   148 Cal.App.4th 1440 (2007) ................................................................16

*Weinberger v. Thornton,*
   114 F.R.D. at 599, 603 (S.D. Cal. 1986) ............................................24

*Zacholl v. Fear & Fear, Inc.,*
   2004 WL 725964 (N.D.N.Y. Apr. 5, 2004)..........................................4

**OTHER AUTHORITIES**

29 C.F.R. § 201 ...........................................................................................4

29 C.F.R. § 541.203(b) ..............................................................................4

29 C.F.R. § 541.205 (2000) ......................................................................4

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION    CV08-00137 JHN (PJWx)

29 C.F.R. § 541.102 ..................................................................................3

29 C.F.R. § 541.106 ..................................................................................3

29 C.F.R. § 541.106(a) .............................................................................3

69 Fed. Reg. 22136 (Apr. 23, 2004) .........................................................3

69 Fed. Reg. 22138 (Apr. 23, 2004) .........................................................4

Fed. R. Civ. Proc. 23 ..............................................................14, 22, 23,  25

IWC Wage Order 4 ....................................................2, 3, 4, 12, 18, 23

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**     **CV08-00137 JHN (PJWx)**

## I.   **INTRODUCTION**

Plaintiffs claim that this Court can determine on a classwide basis whether Branch Managers of banks in grocery stores are exempt and are denied meal and rest breaks.  Yet these Branch Managers have essentially unfettered discretion to run their branch.  It is undisputed that they were entirely responsible for:

- Running an enterprise, their bank, as if it is their own business;
- The productivity of their bank branch and its business;
- Ensuring complete compliance with federal banking laws at every turn, with every transaction and every interaction, by all of their staff;
- Determining how to improve their branch's productivity and staff, managing the staff, and planning the staff's work for optimum productivity;
- Supervising, training, coaching, hiring, firing, disciplining, and evaluating their staff (between two and six employees); and
- Determining how to increase business and their customer base.

Plaintiffs concede that U.S. Bank gives Branch Managers discretion and autonomy to determine how to allocate their time.  Each Branch Manager's individual experiences differ from the others' because they each spend varying amounts of time on work that qualifies them as "exempt" from overtime under California law.

Plaintiffs cannot prove that a class can be certified.  They cannot overcome the overwhelming authority holding that exemption and meal/rest period cases such as this cannot be certified due to the predominance of individual inquiries over common questions.  The wide variations in Branch Managers' testimony about the nature and extent of their duties require the Court to conduct individualized, fact-intensive inquiries to determine whether each Branch Manager met one of several exemptions.

Plaintiffs ask the Court to ignore these individualized inquiries, and determine that common issues predominate based solely on U.S. Bank's "*expectations*" and "staffing documents."  Plaintiffs' contentions are *factually* misplaced because (1) U.S. Bank expects Branch Managers to perform exempt work and communicates those expectations to Branch Managers; (2) staffing documents do not dictate the amount of time Branch Managers spend on certain duties; (3) staffing documents were not communicated to the Branch Managers; and (4) Plaintiffs' own witnesses have never

1

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  heard of the staffing documents.  Plaintiffs' contentions are *legally* misplaced because:
2  (1) even if Plaintiffs could establish a common policy, the Ninth Circuit has explicitly
3  rejected certifying a class based on a common policy to the near exclusion of other
4  individualized issues; and (2) U.S. Bank's alleged "expectations" cannot trump the
5  fact that Branch Managers perform exempt work.

6      Because Plaintiffs have not identified a common policy that outweighs the
7  predominance of the numerous individualized issues in this case, Plaintiffs have failed
8  to meet their burden of proof and class certification must be denied.

9  ## II.  OVERVIEW OF THE EXEMPTIONS

10      California law provides several "exemptions" to the requirement that employers
11  pay overtime, three of which potentially apply here.  The Wage Orders and California
12  courts look to the Code of Federal Regulations and federal authorities interpreting the
13  Fair Labor Standards Act ("FLSA") to determine which duties meet the exemption.
14  IWC Wage Order No. 4-2001 § 1(A); *see also Bell v. Farmers Ins. Exchange*, 87
15  Cal.App.4th 805, 813 (2001).

16  **A.**    **Executive Exemption**
17      The Executive Exemption applies to an individual who, like Branch Managers:
18  - Customarily and regularly directs the work of two or more employees;
19  - Has the authority to hire or fire other employees, or whose suggestions and recommendations to hire, fire, or promote is given particular weight;
20  - Customarily and regularly exercises discretion and independent judgment; and
21  - Is primarily engaged in duties which meet the exemption (i.e., spends more than 50% of his or her time on such duties).  IWC Wage Order No. 4-2001 § 1(A)(1).

23      Duties that meet the exemption include:  interviewing, selecting, and training
24  employees; setting and adjusting their rates of pay and hours of work; directing the
25  work of employees; maintaining production or sales records for use in supervision or
26  control; appraising employees' productivity and efficiency to recommend promotions
27  or other changes in status; handling employee complaints and grievances; disciplining
28  employees; planning work; determining techniques to be used; apportioning work

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION    CV08-00137 JHN (PJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  among the employees; providing for the safety and security of the employees or

2  property; planning and controlling the budget; and monitoring legal compliance

3  measures. 29 C.F.R. § 541.102.  Exempt work also includes "all work that is directly

4  or closely related to exempt work and work which is properly viewed as a means for

5  carrying out exempt functions."  IWC Wage Order No. 4-2001 § 1(A)(1)(e).

6      Time spent simultaneously managing while performing some non-exempt work

7  also qualifies as "exempt" work.  The U.S. Department of Labor and federal courts

8  recognize managers' activities cannot always neatly be divided into the categories of

9  exempt and non-exempt. *See, e.g., Donovan v. Burger King Corp.*, 672 F.2d 221, 226

10  (1st Cir. 1982) ("a strict division is somewhat misleading here:  one can still be

11  'managing' if one is in charge, even while physically doing something else").[1]

12      In determining whether an employee meets the Executive Exemption, courts

13  must examine *actual job duties* "first and foremost."  IWC Wage Order No. 4-2001

14  § 1(A)(1)(e).  But if actual job duties were the only measure of the exemption, then

15  "an employee who is supposed to be engaged in [an exempt activity] during most of

16  his working hours and falls below the 50 percent mark due to his own substandard

17  performance" would "be able to evade a valid exemption."  *Ramirez v. Yosemite*

18  *Water*, 20 Cal.4th 785, 802 (1999).  To prevent this unfairness to the employer:

19      . . . the trial court should also consider whether the employee's practice
        diverges from the employer's realistic expectations, whether there was any
20      concrete expression of employer displeasure over an employee's substandard
        performance, and whether these expressions were themselves realistic given the
21      actual overall requirements of the job. *Id.*; *see also* IWC Wage Order No. 4-
        2001 § 1(A)(1)(e).
22

---

23  [1] This reflects the state of the law both before and after the 2004 revisions to the FLSA regulations
    interpreting the exemptions.  The 2004 revisions to the FLSA regulations added a new section, 29 C.F.R.
24  § 541.106, which was intended to clarify that time managers spend multitasking counts toward the exemption
    so long as managing is one of the tasks being performed.  The new section, "Concurrent duties," states that
25  "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the
    executive exemption if the requirements [for the exemption] are otherwise met." 29 C.F.R. § 541.106(a).
26  The 2004 revisions on concurrent duties did not represent an innovation in wage and hour law, but rather
    codified a substantial body of executive exemption case law that had developed under the old regulations.  As
27  the Department explained in the preamble to the 2004 rule, "[t]he Department believes that the proposed and
    final regulations are consistent with current case law which makes clear that the performance of both exempt
28  and nonexempt duties concurrently or simultaneously does not preclude an employee from qualifying for the
    executive exemption.  Numerous courts have determined that an employee can have a primary duty of
    management while concurrently performing nonexempt duties." 69 Fed. Reg. 22136 (Apr. 23, 2004).

3

**B.** **Administrative Exemption**

The Administrative Exemption applies to an individual who:

- Has duties involving the performance of office or non-manual work directly related to management policies or general business operations of his or her employer or his or her employer's customers;
- Customarily and regularly exercises discretion and independent judgment;
- Regularly and directly assists a proprietor or an employee in a bona fide executive or administrative capacity; or executes under only general supervision special assignments and tasks; and
- Is primarily engaged in duties which meet the exemption (i.e., spends more than 50% of his or her time on such duties). IWC Wage Order No. 4-2001 § 1(A)(2).

Managers charged with responsibility for the success of a business frequently spend time ensuring customer satisfaction, developing new customer relationships, and projecting a positive image as the face of the business. It has long been recognized that "servicing of the business," which includes such work as marketing, promoting sales, and representing the company, qualifies as exempt work under the administrative exemption. 29 C.F.R. 541.205 (2000); 29 C.F.R. § 201.[2] The preamble to the FLSA overtime regulations notes that courts interpreting the old federal regulations typically consider the duty of being the "primary contact to public or customers on behalf of the employer" as a factor that weighs in favor of finding exempt status. 69 Fed. Reg. 22144.[3]

**C.** **Outside Sales Exemption**

The Outside Sales exemption applies to an individual who customarily and regularly works more than half of his or her working time away from the employer's place of business engaged in sales activities. IWC Wage Order No. 4-2001 § 2(M).

---

[2] *See also Report and Recommendations on Proposed Revisions of Regulations, Part 541* at p. 63, by Harry Weiss, Presiding Officer, Wage and Hour and Public Contracts Divisions, U.S. Department of Labor (June 30, 1949); 69 Fed. Reg. 22138 (Apr. 23, 2004).

[3] *See also Zacholl v. Fear & Fear, Inc.*, 2004 WL 725964, *2 n.2 (N.D.N.Y. Apr. 5, 2004) ("administrative operations of a business include work that constitutes 'servicing' of a business, which, for example, includes advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control"); *Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 216 (N.D.N.Y. 2002) ("Courts have interpreted 'servicing' the employer to mean work 'ancillary to an employer's principal production activity'"). Section 541.203(b) of the current regulations lists "marketing, servicing or promoting the employer's financial products" as examples of exempt administrative work. 29 C.F.R. 541.203(b).

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

# III.   STATEMENT OF FACTS

## A.   Branch Managers Are Responsible for Managing Their Branch.

U.S. Bank operates bank branches inside grocery stores, offering a comprehensive line of banking, brokerage, mortgage, trust and payment service products to consumers and businesses.  Each branch is managed by a Branch Manager who is given the branch as if it were his or her own small business to run.[4]  The Branch Managers supervise two to six bankers or other employees[5] and perform a number of other exempt functions, including:

- Continually looking/analyzing/determining methods to improve their branch's service and performance;
- Planning the work and apportioning sales goals among their employees;
- Scheduling their employees;
- Recruiting, interviewing, and hiring top talent for their branches;
- Training new employees;
- Providing on-going goal-setting, coaching, and feedback to their employees;
- Ensuring the branch's compliance with federal laws and U.S. Bank's operations standards;
- Analyzing financial statements and reports to evaluate business practices and making decisions about how to improve the branch's performance;
- Evaluating employees' performance on a regular basis, including annual reviews and written employee development plans;
- Independently addressing, working through, and creatively resolving daily business challenges, employee issues, and customer issues;
- Decision-making and effectively balancing analysis and action, recognizing broad implications of management decisions, and making sound decisions in the face of ambiguity;
- Leading and empowering his or her staff to accomplish their objectives – and leading by example;
- Communicating effectively with customers, employees, and individuals of all backgrounds; actively listening, communicating their rationale as a branch manager for decisions and maintaining open communications as a leader;

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

---

[4] Mckee Dep. 46:4-9, 47:2-8; Hilt Dep. 95:25-96:20; Romero Dep. 40:4-6, 64:7-65:12; Page Dep. 64:15-23; Kuhn Dec. ¶5; Donahue Dec. ¶4; Cote Dec. ¶7.  ("Dep." refers to the deposition testimony lodged concurrently herewith; "Dec." refers to the declarations attached to the Declaration of Joan B. Tucker Fife.)
[5] Mckee Dep. 84:17-85:10, 85:23:86:3; Romero Dep. 81:13-82:10; White Dep. 101:22-23; Page Dep. 86:8-16; Vladimirsky Dep. 62:15-24; Phillips Dec. ¶9; Cote Dec. ¶8; Kerimian Dec. ¶6; Donahue Dec. ¶10; Groppetti Dec. ¶8; Woolsey Dec. ¶8; Mora Dec. ¶9; Thomas Dec. ¶10; Kuhn Dec. ¶13; Williamson Dec. ¶8; Brown Dec. ¶17; Trimble Dec. ¶12; Vitug Dec. ¶13; Howie Dec. ¶12; Kuni Dec. ¶8; Gabler Dec. ¶8; Hedayati Dec. ¶8.

- Bearing responsibility and being accountable for all actions and outcomes at the branch – and being proactive.[6]

Branch Managers' incentive compensation is based on how well they manage and supervise their team – not their individual sales results.[7] They earn incentive compensation based on *overall* branch sales.[8] In contrast, their bankers earn *individual* incentive payments on their sales.[9] The Branch Managers are thereby incentivized to train and coach their bankers to generate sales themselves.[10]

Branch Managers also perform work under the Administrative Exemption, such as planning, representing the Bank, promoting sales, and business research.[11] They are entrusted with full responsibility for the success or failure of their branch.[12] They

[6] Brown Dep. 98:16-99:1; White Dep. 28:22-29:6, 38:12-17, 68:7-70:3; Romero Dep. 71:15-72:5; Garcia Dep. 145:25-146:14, 87:5-12, 60:25-61:12, 41:18-25, 50:1-52:8, 102:15-25, 103:10-25, 63:25-64:14, 64:23-65:20, 83:24-84:11, 151:1-153:8, 153:14-15, 156:19-21, 28:23-25, 59:18-60:23, 66:8-67:12, 90:19-91:1, 46:22-47:13, 70:9-22, 71:11-73:17, 84:12-17, 84:18-23, 86:6-14, 87:5-12, 106:19-107:4; Page Dep. 71:20-24, 79:9-12, 79:25-8:2, 82:10-12, 82:24-83:2, 102:3-103:17, 103:24-104:1, 104:6-7, 104:20-21, 104:22-25, 107:16-18, 109:15-17; Williams Dep. 161:4-7, 162:11-163:11, 187:2-4, 165:1-169:8, 162:1-7, 170:1-172:18, 194:13-20; Vladimirsky Dep. 31:11-19; Cooke Dep. 48:17-49:1); Thomas Dec. ¶8; Kuhn Dec. ¶33; Donahue Dec. ¶7; Dominguez Dec. ¶10; Trimble Dec. ¶7; Mora Dec. ¶31; Keriman Dec. ¶7; Howie Dec. ¶7; Hale Dec. ¶33; Gropetti Dec. ¶6; Gabler ¶25; Williamson Dec. ¶7; Woolsey Dec. ¶6; Hedayati Dec. ¶6; Cote Dec. ¶6; Lane Dec. ¶7; Phillips Dec. ¶7.

Note that Branch Managers acquired as part of U.S. Bank's merger with Downey Savings were classified as non-exempt. But they perform different functions than U.S. Bank Branch Managers. (Brown Dep. 161:4-163:25.) They are on development plans to allow them to become trained to be U.S. Bank Branch Managers, and remain non-exempt until they have completed this. (Brown Dep. 161:4-163:25.)

[7] White Dep. 112:17-112:25; Garcia Dep. 63:11-17; Page Dep. 68:18-22, 69:23-70:4; Williams Dep. 120:4-5; Watson Dep. 33:16-39:13; Brown Dec. ¶21; Gabler Dec. ¶12; Gropetti Dec. ¶12; Hale Dec. ¶18; Howe Dec. ¶19; Kuni Dec. ¶11;Vitug Dec. ¶18; Trimble Dec. ¶18; Thomas Dec. ¶14; Kuhn Dec. ¶17; Dominguez Dec. ¶17; Donahue Dec. ¶13; Petrucela Dec. ¶18; Wilkinson Dec. ¶24; Williamson Dec. ¶12; Woolsey Dec. ¶12; Mora Dec. ¶16; Keriman Dec. ¶21; Hedayati Dec. ¶12; Lane Dec. ¶21; Phillips Dec. ¶13.

[8] *Id.*

[9] Page Dep. 69:19-22; White Dep. 68:22-69:7, 71:2-71:18, 112:5-13; Gabler Dec. ¶12; Gropetti Dec. ¶13; Mora Dec. ¶18; Petrucela Dec. ¶19-20; Williamson Dec. ¶12; Thomas Dec. ¶14; Donahue Dec. ¶13; Woolsey Dec. ¶12; Hedayati Dec. ¶12; Phillips Dec. ¶13; Lane Dec. ¶21.

[10] Crall Dec. ¶13; Gabler Dec. ¶16; Gropetti Dec. ¶19; Hale Dec. ¶22; Howie Dec. ¶8; Hunt Dec. ¶26; Keriman Dec. ¶11; Kuni Dec. ¶12; Manasala Dec. ¶11; Mora Dec. ¶22; Trimble Dec. ¶23; Donahue Dec. ¶18; Kuhn Dec. ¶18; Brown Dec. ¶28-29; Williamson Dec. ¶13; Hedayati Dec. ¶16; Lane Dec. ¶21; Cote Dec. ¶11; Phillips Dec. ¶13.

[11] Brown Dep. 101:2-102:1; Garcia Dep. 68:10-69:16, 84:18-23, 88:20-23, 96:1-20, 104:23-105:15; Romero Dep. 124:20-126:19, 127:16-128:13, 62:16-63:2, 63:14-64:2; White Dep. 56:16-57:19; Page Dep. 72:2-4, 118:6-9; Chawla Dep. 37:24-39:1, 41:16-19, 134:21-135:1, 110:9-112:8; Mckee Dep. 44:6-45:8, 97:23-98:13; Watson Dep. 109:2-19; Spainhower Dep. 326:11-14; Vladimirsky Dep. 66:8-67:8, 118:24-119:3; Cooke Dep. 102:20-103:13, 185:12-16, 185: 17-24; Williamson Dec. ¶7; Brown Dec. ¶10; Vitug Dec. ¶10; Kuhn Dec. ¶9; Donahue Dec. ¶10; Dominguez Dec. ¶10; Thomas Dec. ¶7; Trimble Dec. ¶7; Mora Dec. ¶6; Kuni Dec. ¶6; Howie Dec. ¶7; Hale Dec. ¶8; Groppetti Dec. ¶6; Gabler Dec. ¶6; Hedayati Dec. ¶6; Cote Dec. ¶6; Phillips Dec. ¶7; Lane Dec. ¶7.

[12] Page Dep. 71:20-24; White Dep. 54:24-25; Garcia Dep. 59:18-60:23, 66:8-67:12, 90:19-91:1, 145:25-146:8; Mckee Dep. 44:6-45:8; Hilt Dec. 168:8-25, 170:1-11; Watson Dep. 109:2-19; Vladimirsky Dep. 66:8-

6

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   promote the Bank's services by walking through the store or visiting local businesses

2   to introduce the Bank.[13]   In so doing, the Branch Managers develop new customers,

3   improve customer relations, and promote the Bank and the branch as a whole.[14]   This

4   is administratively exempt work.

5        Some of Plaintiffs' witnesses testified that they leave their branches to sell to

6   customers in the aisle or in the community.[15]   If so, this would be performing work

7   under the Outside Sales exemption.

8        Branch Managers assigned to be Lead or Cluster Managers have *additional*

9   management responsibilities, such as overseeing additional branches, assisting other

10  Branch Managers managing their branch, motivating and training less experienced

11  Branch Managers, leading daily conference calls for the District Manager, finding

12  employees to help staff other branches, and other special projects.[16]   One Branch

13  Manager testified that as a Lead Manager, he "was running as many as 16 branches."[17]

14

15

16  18; 61:5-7; Hedayati Dec. ¶6, 11; Hale Dec. ¶15, 34; Manansala Dec. ¶10, 18, 19; Woolsey Dec. ¶6, 23;
     Dominguez Dec. ¶16, 27; Mora Dec. ¶6, 14; Gabler Dec. ¶6, 11, 25; Trimble Dec. ¶35, Donahue Dec. ¶12,
17  13, 20, 28; Vitug Dec. ¶15, 16, 27, 35; Wilkinson Dec. ¶29, 30; Brown Dec. ¶19; Williamson Dec. ¶10, 12;
     Howie Dec. ¶7, 16, 30; Keriman Dec. ¶7, 18; Kuni Dec. ¶5, 11; Thomas Dec. ¶8, 14; Lane Dec. ¶7, 9; Phillips
18  Dec. ¶7, 26; Cote Dec. ¶6, 12.
     [13] Garcia Dep. 96:1-20, 104:23-105:15; Romero Dep. 70:7-71:14; White Dep. 56:16-57:19; Page Dep. 102:3-
19  103:15, 118:6-9; Chawla Dep. 131:4-131:22, 135:5-8, 135:18-136:2; Mckee Dep. 138:25-139:23, 146:5-
     147:18; 185:17-24,110:22-114:5; Crall Dep. ¶22-24, Gabler Dec. ¶25; Manansala Dec. ¶18-19; Petrucela Dec.
20  ¶30; Vitug Dec. ¶35; Wilkinson Dec. ¶29-30; Woolsey Dec. ¶23; Cote Dec. ¶12.
     [14] Garcia Dep. 106:19-107:4, 96:1-20, 104:23-105:15, 68:10-69:16, 10:9-22, 71:11-73:17; Page Dep. 118:6-9,
21  102:3-103:15; Chawla Dep. 131:4-5, 166:20-168:4; Mckee Dep. 44:6-45:8, 69:1-2; Watson Dep. 37:17-
     38:13; 73:2-19; 147:14-150:9, 151:6-152:6, 153:24-154:6; Vladimirsky Dep. 68:25-69:2; 94:11-95:9; 110:22-
22  114:5; Hedayati Dec. ¶6, 11, 22; Manansala Dec. ¶18; Mora Dec. ¶6, 7, 26; Gropetti Dec. ¶6, 12; Woolsey
     Dec. ¶6; Hale Dec. ¶15, 31; Kuni Dec. 6, 11; Hurst Dec. ¶19; Howie Dec. ¶8; Crall Dec. ¶23; Williamson
23  Dec. ¶7, 12; Brown Dec. ¶10, 19, 37; Wilkinson Dec. ¶8, 9, 30; Vitug Dec. ¶10, 16; Donahue Dec. ¶7, 13, 25;
     Dominguez Dec. ¶10, 22, 32; Trimble Dec. ¶7, 14; Pavlitsky Dec. ¶7; Baer Dec. ¶10, 21; Phillips Dec. ¶7;
24  Lane Dec. ¶7; Cote Dec. ¶6, 12.
     [15] White Dep. 38:12-17, 30:14-19; Page Dep. 48:1-48:11; Williams Dep. 128:23-140:8, 141:3-142:10,
25  176:23-177:12; Garcia Dep. 68:10-69:16, 96:1-20; Cooke Dep. 185:17-24, 110:22-114:5
     [16] Garcia Dep. 92:3-13; White Dep. 86:12-87:11, 89:11-90:9; Romero Dep. 118:1-10; McKee Dep. 120:6-
26  122:14, Chawla Dep. 119:2-11, 119:12-19.  Declarant Procopio claims that "as a lead manager, I assisted *five*
     other [Branch Managers] in my district with things such as daily problems, special projects, leading
27  conference calls, and finding fill-in employees." (Procopio Dec. ¶9 (emphasis added).))  In deposition
     testimony in another wage and hour claim Procopio filed against a different employer, Procopio testified that
28  at U.S. Bank he was a "branch manager, as well, and also a lead manager, which meant that I was running as
     many as *16 branches*."  Procopio Dep. 245:4-24 (attached to the Declaration of Joan B. Tucker Fife).
     [17] Procopio Dep. 245:4-24.

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION        CV08-00137 JHN (PJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**B.**     **Plaintiffs and Their Witnesses Admit They Performed Exempt Work.**

Plaintiffs and their witnesses admit that: (1) Branch Managers have the ultimate responsibility for the supervision and success of their branch[18]; (2) "U.S. Bank expected me to be the onsite *leader* in sales and customer service"[19]; (3) they were expected to "lead by example"[20]; (4) they participated in daily conference calls to set goals for their branches[21] (which required Branch Managers to review the branch's goals with their employees and plan the work of their employees).[22] Plaintiffs and their witnesses also admit that they performed a variety of other exempt duties that they omitted from their declarations including: interviewing and hiring employees, monitoring federal regulation branch compliance, planning employees' work, apportioning sales goals, coaching and disciplining, resolving employee and customer complaints, making discretionary banking decisions affecting the branch's finances (e.g., when to reverse overdraft fees for customers, *inter alia*), and monitoring the branch budget.[23]

Plaintiffs' witnesses further admit that to the extent they performed the same

[18] Mckee Dep. 44:6-45:8; Hilt Dep. 95:25-96:20; Garcia Dep. 59:18-60:23, 66:8-67:12; 145:25-146:8; White Dep. 54:24-25; Page Dep. 71:20-24; Spainhower Dep. 202:25, 282:25-283:4; Vladimirsky Dep. 68:7-24, 67:4-8, 66:8-18; Cooke Dep. 122:18-20; PCM Dec. ¶6, 7 (Rather than list every putative class member declaration submitted by Plaintiffs, U.S. Bank cites to "PCM Dec." as a whole because these cookie-cutter declarations contain generally the same information in identical paragraph numbers.)
[19] Garcia Dep. 127:13-128:5; Vladimirsky Dep. 160:9-13; PCM Dec. ¶6, 7 (emphasis added).
[20] Garcia Dep. 92:3-13; Romero Dep. 43:1-23, 108:24-109:7; White Dep. 69:21-70:3; Mckee 167:2-23; Spainhower Dep.310:16-19, 319:10-13; Vladimirsky Dep. 160:9-16; Cooke Dep. 108:13-21.
[21] Vladimirsky Dep. 51:2-8; Garcia Dep. 32:21-33:20; Romero Dep. 62:16-63:2, 63:14-64:2, 107:16-19; White Dep. 119:20-25; Brown Dep. 105:1-120:25; Williams Dep. 121:2-12; Spainhower Dep.70:6-71:22; PCM Dec. ¶3, *but see* Paniagua Dec. (did not include discussion of conference calls); Mendoza Jr. Dec. ¶3 (district managers held two weekly conference calls as opposed to daily).
[22] Brown Dep. 105:1-120:25, Garcia Dep. 60:25-61:12; Page Dep. 44:7-20.
[23] Brown Dep. 98:16-99:1; White Dep. 28:22-29:6, 38:12-17, 68:7-70:3, 52:1-53:18, 33:12-34:3, 30:13-19, 86:12-87:11, 89:11-90:9, 88:1-88:21; Romero Dep. 53:15-54:11, 55:20-56:1, 59:4-14, 66:20-68:6, 81:13-82:10, 98:11-100:11, 101:22-103:5, 118:1-10, 123:10-124:5, 124:20-126:19, 128:21-129:2; Garcia Dep. 145:25-146:14, 87:5-12, 60:25-61:12, 41:18-25, 50:1-52:8, 102:15-25, 103:10-25, 63:25-64:14, 64:23-65:20, 83:24-84:11, 151:1-153:8, 153:14-15, 156:19-21, 28:23-25, 59:18-60:23, 66:8-67:12, 90:19-91:1, 46:22-47:13, 70:9-22, 71:11-73:17, 84:12-17, 84:18-23, 86:6-14, 87:5-12, 106:19-107:4; Page Dep. 71:20-24, 79:9-12, 79:25-8:2, 82:10-12, 82:24-83:2, 102:3-103:17, 103:24-104:1, 104:6-7, 104:20-21, 104:22-25, 107:16-18, 109:15-17; Chawla Dep. 98:17-20, 106:14-23, 160:2-161:1, 94:8-95:10; Mckee Dep. 97:23-98:13, 82:10-84:16, 133:6-136:7, 84:8-14, 126:12-128:25; Spainhower Dep. 226:3-228:17, 243:25-244:6; Vladimirsky Dep. 39:18-40:13, 72:21-75:9, 76:3-9, 77:15-78:4, 78:9-85:13, 123:8-9, 113:12-24, 121:1-123:13, 125:10-12, 83:10-84:7; Cooke Dep. 48:17-49:1, 33:5-19, 78:10-18, 115:2-116:7, 118:4-20, 178:16-20,185:12-16, 31:21-25, 41:20-42:2, 46:25-47:2, 49:2-56:5.

8

1    duties as their subordinates, they were managing at the same time.  Spainhower,

2    Romero, Garcia, and White claimed they "led by example" when engaged in teller

3    transactions so their employees could learn from them; Mckee stated that when she

4    was at the teller line, she listened to her employees and told them how to improve

5    their sales.[24]

6    **C.    Time Spent on Exempt Functions Varies.**

7        Individual Branch Managers spend different amounts of time on exempt tasks.

8    Branch Managers (including one of Plaintiffs' witnesses[25]) have testified that they

9    spend more than 50% of their time performing exempt duties.[26]  Plaintiffs' witnesses

10    admit that they spent varying amounts of time on exempt duties, e.g.:  (1) Garcia

11    admitted that he never performed teller transactions at one branch and believed that he

12    was properly classified as exempt[27]; and (2) Romero admitted that he only spent one

13    hour on the teller line twice a day.[28]

14        The *total* number of teller transactions at the branches ranges between 0 and 15

15    per hour.[29]  Most transactions take less than five minutes, and the most common

16    transactions (cashing/depositing checks) often take less than two minutes.[30]  Branch

17    Managers usually have at least two bankers working with them,[31] so there would

18    never be a need for Branch Managers to do teller work.  But to the extent that they do,

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

19
20    [24] Garcia Dep. 127:13-128:5; White Dep. 69:21-70:3; Romero Dep. 43:1-23, 108:24-109:7; Mckee Dep. 124:15-126:10; Spainhower Dep. 310:16-19.
21    [25] Page admits that she spent more than 50% of her time promoting the branch – an administratively exempt duty. (Page Dep. 118:6-9.)
22    [26] Howie Dec. ¶14; Crall Dec. ¶5; Williamson Dec. ¶10; Brown Dec. ¶11; Gabler Dec. ¶6; Trimble Dec. ¶7; Vitug Dec. ¶10; Kuhn Dec. ¶10; Hale Dec. ¶9; Hedayati Dec. 6; Mora Dec. ¶7; Woolsey Dec. ¶6, Dominguez Dec. ¶11, Donahue Dec. ¶7; Ortiz Dec. ¶1; Pavliskiy Dec. ¶7; Petrucela Dec. ¶7; Phillips Dec. ¶7; Lane Dec. ¶7-9; Kuni Dec. ¶6; McKee Dep. 145:10-146:1.
23    [27] Garcia Dep. 129:2-14, 138:10-13, 143:10-145:2, 149:1-10.  Only after his supervisor changed, did he ever perform any teller work whatsoever.
24    [28] Romero Dep. 47:10-22.
25    [29] Baisch Dep. Ex. 2, pp.5-7; *see also* White Dep. 47:4-6; Spainhower Dep. 338:5-13; Cooke Dep. 175:19-176:20.
26    [30] Baisch Dep. Ex. 2, p.1; Garcia Dep. 109:20-110:16, 111:10-112:3; Romero Dep. 44:24-45:4, 45:9-47:22; 158:13-17.
27    [31] Garcia Dep. 87:5-12; Page Dep. 114:10-21; White Dep. 101:22-23; Romero Dep. 66:20-68:6, 81:13-82:10; McKee Dep. 84:17-85:10, 85:23-86:3; Williams Dep. 88:8-90:24, 145:7-18, 238:13-241:3; PCM Dec. ¶5;
28    Cote Dec. ¶8, Phillips Dec. ¶9; Lane Dec. ¶10; Hedayati Dec. ¶8; Kerimian Dec. ¶6; Donahue Dec. ¶10; Dominguez Dec. ¶14; Groppetti Dec. ¶8; Woolsey Dec. ¶8; Mora Dec. ¶9; Thomas Dec. ¶10; Kuhn Dec. ¶13; Gabler Dec. ¶8; Brown Dec. ¶17; Williamson Dec. ¶8; Howie Dec. ¶12; Kuni Dec. ¶8.

9

1   how much time allegedly spent on teller transactions depends on the branch's

2   transaction volume, how many employees the Branch Manager decides to schedule to

3   work on a given day, what kinds of transactions are performed on a given day, and

4   whether the Branch Manager is available and decides to work the teller line.[32]

## D.   U.S. Bank Expects that Branch Managers Spend the Majority of Their Time Performing Exempt Work.

If a particular Branch Manager performed non-exempt work for 50% or more of

his working time, *he was not doing his job.*  The job description specifies:

> More than one-half of the Branch Manager's time is *expected* to be spent on management duties such as personnel management, handling customer disputes that are escalated from other branch staff, etc.[33]

U.S. Bank's criteria for evaluating Branch Managers' job performance rates

performance in terms of:  managing the sales staff; growing the business every

quarter; coaching and development; leadership; recruiting and developing staff; and

actively ensuring compliance with several federal banking laws; among other things.[34]

## E.   "Staffing Documents" Do Not Dictate or Express Any Expectation that Branch Managers Perform 50% or More Non-Exempt Work.

Plaintiffs misstate the history, purpose, and relevance of what they term

"staffing documents."[35]  U.S. Bank's Retail Staffing Department made

recommendations for staffing levels for retail operations.[36]  The Department is

separate from Human Resources, and has no role in analyzing, recommending, or

deciding whether employees are exempt or non-exempt.[37]  In 2004 and 2007, the

Department led Time Studies of certain tasks of employees in *Midwest* branches.[38]  It

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

---

[32] Garcia Dep. 129:2-14, 138:10-13, 129:15-130:16; 140:3-23; Chawla Dep. 157:20-158:6; Spainhower Dep. 136:2-22; Brown Dec. ¶11-12, 18, 14; Gabler Dec. ¶25-26; Groppeti Dec. ¶17; Hale Dec. ¶34, Howie Dec. ¶13, 30; Kerimian Dec. ¶18; Manansala Dec. ¶21; Mora Dec. ¶7, 17, 31; Petrucela Dec. ¶30; Trimble Dec. ¶35; Vitug Dec. ¶35; Kuhn Dec. ¶10, 33; Dominguez Dec. ¶11; Woolsey Dec. ¶23-24; Hurst Dec. ¶10; Pavlitsky Dec. ¶11; Ortiz Dec. ¶12; Baer Dec. ¶7; Lane Dec. ¶18; Phillips Dec. 26; Cote Dec. ¶28.

[33] Watson Dec. ¶ 6, Ex. A.

[34] Romero Dep. 92:13-114:5 Ex. 6; Garcia Dep. 116:5-117:4 Ex. 3; White 80:15-86:2 Ex. 4; Page Dep. 100:3-105:21.

[35] The underlying evidence Plaintiffs cite for the factual propositions in their brief often does not support the propositions.  *See* chart attached to the Declaration of Joan B. Tucker Fife.

[36] Baisch Dep. 23:23-25, 34:11-14, 49:11-50:2; Baisch Dec. ¶2.

[37] Baisch Dep. 58:9-59:25, 60:16-62:12; Baisch Dec. ¶2.

[38] Baisch Dep.15:24-17:5, 18:5-18, 60:19-61:19, 65:24-66:1.

10

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  did not study *any* California branches in grocery stores.[39]   The time studies were *not*

2  *exhaustive or comprehensive* and did not include all responsibilities and tasks, such

3  as: management tasks that vary among the managers, given their separate challenges

4  and management styles; management conference calls; and frequent sales

5  campaigns.[40]   All other "Staffing Documents" on which Plaintiffs rely are premised

6  on these non-exhaustive Time Studies (e.g., the documents called "Staffing Models,"

7  "Time Standards," "Scheduling Tool," and "District Summary Reports").

8     As a result of the 2004 Time Studies, the Department created "Staffing

9  Models," which provided the minimum recommended Staffing Level (denoted "Full-

10  Time Equivalents" or "FTEs") for a branch.[41]   The Staffing Models do not establish

11  (as argued by Plaintiffs) that it is impossible for Branch Managers to spend more than

12  50% of their time performing exempt functions. *Plaintiffs' arguments are based on*

13  *the false premise that the Staffing Models encompass all branch activities.*   The

14  Staffing Models are *minimum recommendations* to ensure operational capacity and

15  security.[42]   They do not represent or dictate an exhaustive list of branch activities, how

16  much time should be spent on any given activity, who should do which tasks, or how

17  and to whom a Branch Manager should delegate tasks.[43]   U.S. Bank expects Branch

18  Managers, as leaders, to go beyond the minimum recommendations.[44]

19     The Staffing Levels are not limited to the time estimates in the Staffing

20  Models.[45]   The Staffing Models themselves *add* more staff to the branch as a cushion

21  to allow for other activities.[46]   For example, in the February to July 2006 Staffing

22  Model for Nohl Ranch, the total amount of time for the duties listed on the Staffing

23  Model requires only 3.75 FTEs to complete.  However, the "Minimum Staff For This

24

[39] Baisch Dep.125:1-17; Baisch Dec. ¶3.
25  [40] Baisch Dep. 66:6-24, 83:8-19, 131:18-136:21 (the tasks on the Staffing Model are "not comprehensive"; "every branch is going to have different tasks they are going to do" . . . "[b]ecause every manager has a
26  different style and they focus on different tasks").
[41] Watson Dec. ¶5.
27  [42] Baisch Dep. 49:11-50:8, 54:21-55:5; Baisch Dec. ¶4; Watson Dec. ¶5.
[43] Baisch Dep. 83:8-19, 131:18-136:21, Baisch Dec. ¶4.
28  [44] Watson Dec. ¶5; Baisch Dec. ¶5.
[45] Baisch Dep. Ex. 2, pp. 12-13, 16-17, 20-21, 24-25; Baisch Dec. ¶5  Watson Dec. ¶3.
[46] Baisch Dep. Ex. 2, pp. 12-13.

11

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Branch" was set over 33% higher, at 5.5 FTEs.[47]  More importantly, if a branch's needs exceed the recommended level of FTEs, the Branch Manager can hire more individuals with almost unfettered discretion.[48]  No Branch Manager in California has ever been disciplined, terminated, or counseled for exceeding the recommended FTE.[49]  Thus, the Staffing Models do not reflect apportionment of work at branches.

After the 2007 Time Studies, U.S. Bank no longer used Staffing Models.[50] Instead, the Department created "Time Standards."[51]  These "standards" were not created to dictate how much time various banking tasks *should* take, but instead to help the Department create a Scheduling Tool.[52]  The Time Standards are *not communicated* to Branch Managers or even their supervisors, District Managers.[53] The Branch Managers have never heard of the Time Standards, thus they do not dictate the work performed by Branch Managers.[54]

The Scheduling Tool has *no information* whatsoever about individual tasks performed in a branch and is based on time studies conducted outside of California.[55] The vast majority of Branch Managers (83%) have never used the Scheduling Tool (and many of Plaintiffs' witnesses have never heard of it).[56]

Accordingly, the Staffing Documents do not communicate any expectations as to the amount of non-exempt work that Branch Managers perform; nor do they illustrate what Branch Managers actually do at work – the fundamental question at the heart of the certification motion, which can only be done by individual inquiry.

---

[47] *Id.*
[48] Watson Dec. ¶3; Baisch Dec. ¶5.
[49] Watson Dec. ¶6.
[50] Baisch Dep. 101:4-9; Baisch Dec. ¶7.
[51] Baisch Dec. ¶7.
[52] *Id.*
[53] Baisch Dec. ¶6; Garcia Dep. 55:23-56:11, 141:19-145:3.
[54] White Dep. 65:23-25; Garcia Dep. 55:23-56:11, 141:19-145:3.
[55] Baisch Dep. 101:4-9, Ex. 2.
[56] Garcia Dep. 55:23-56:11, 141:19-145:3; Mckee Dep. 73:15-74:4; Chawla Dep. 106:24-107:10, 108:14-110:5; Spainhower Dep. 273:14-24; Gabler Dec. ¶19; Kerimian Dec. ¶14, 20; Wilikinson Dec. ¶20; Williamson Dec. ¶17; Kuhn Dec. ¶26; Woolsey Dec. ¶19.

12

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**F.**     **Branch Managers are Provided with Meal and Rest Periods.**

Exempt employees are not entitled to meal and rest periods. IWC Wage Order No. 4-2001 § 1(A). Nonetheless, U.S. Bank *does* provide meal and rest periods to Branch Managers.[57] Branch Managers are responsible for scheduling meal and rest periods.[58] *None* of the Plaintiffs' declarants stated that Branch Managers did not receive rest breaks. Some testified that they were provided with and took both meal and rest periods.[59]

**G.**     **Plaintiffs Spainhower and Williams**

Spainhower was hired as a banker in 2003, and was promoted to Branch Manager in November 2005.[60] In late 2006, Spainhower assumed responsibilities for managing a *second* branch.[61] Spainhower testified he was responsible for managing the branches and leading by example.[62] Yet he did not perform some exempt tasks other Branch Managers did. For example, he did not review reports on the productivity of his branch and its employees or try to determine how to run a more successful branch, although it was his responsibility to ensure the productivity of the branch.[63] In contrast, several of Plaintiffs' witnesses admitted that they spent time analyzing reports and planning, since that was an important aspect of running the branch.[64]

Williams was hired in April 2008 to manage a branch that was set to open

---

[57] Chawla Dep. 142:25-143:19; Baisch Dep. 103:19-24; Spainhower Dep. 234:3-6; Brown Dec. ¶8, 43, 47; Gabler Dec. ¶32-33; Groppetti Dec. ¶29; Hale ¶36, 38; Howie Dec. ¶8, 40-41; Kuni Dec. ¶20; Mora Dec. ¶32-34; Petrucela Dec. ¶32; Trimble Dec. ¶7; Vitug Dec. ¶36-38, 40-41; Wilkinson Dec. ¶35; Kuhn Dec. ¶36; Dominguez Dec. ¶36; Donahue Dec. ¶31-34; Woolsey Dec. ¶27-31.
[58] Garcia Dep. 86:6-14; Mckee Dep. 141:23-142:10; Hilt Dep. 56:1-7; Vladimirsky Dep. 135:16-136:11; Brown Dec. ¶5, 8, 32; Gabler Dec. ¶5, 19-20; Petrucela Dec. ¶23, 31; Vitug Dec. ¶7; Kerimian Dec. ¶14; Kuni Dec. ¶18-19; Mora Dec. ¶23-24; Trimble Dec. ¶5, 28; Wilkinson Dec. ¶20-21; Williamson Dec. ¶17; Kuhn Dec. ¶26; Dominguez Dec. ¶9, 28, 30; Thomas Dec. ¶21, 28; Donahue Dec. ¶21; Woolsey Dec. ¶19
[59] Vladimirsky Dep. 142:18-143:22, 146:22-147:15 (admitted she took 1-3 personal phone calls per day, which lasted from 5-15 minutes each); Chawla Dep. 142:25-143:19 (smoking breaks); Williams Dep. 195:10-196:24, 197:13-198:3.
[60] Spainhower Dep. 40:21-41:1.
[61] Spainhower Dep. 60:3-14.
[62] Spainhower Dep. 202:25, 310:16-19, 319:10-13.
[63] Spainhower Dep. 314:3-23, 282:25-283:4.
[64] Romero Dep. 62:16-63:2, 63:14-64:2, 120:15-121:24; Williams Dep. 158:19-161:14.

13

shortly.[65]  Because of construction issues, the branch did not open until the last quarter of 2008.[66]  Williams was a "Floating" Branch Manager from April 2008 through November 2008, when he was terminated for violating company policy.[67]  **Williams admits that his experience as a Branch Manager was fundamentally different than other Branch Managers.**[68]  Williams *never managed his own branch.*[69]  Meanwhile, Williams completed online training, at-work training shadowing other Branch Managers, and assisted other branches.[70]  He did not perform several exempt activities that other Branch Managers performed, including:  scheduling, training employees, and directing employees' work.[71]  Williams knew of no more than one other "Floating" manager.[72]

## IV.  ARGUMENT

### A.  Plaintiffs Must Prove that a Class Can Be Certified.

Plaintiffs bear the heavy burden of demonstrating that their case meets the requirements of Fed. R. Civ. Proc. 23.  *Vinole v. Countrywide Home Loan, Inc.*, 571 F.3d 935, 944 n.9 (9th Cir. 2009).  Plaintiffs must show that their proposed class satisfies the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy – and at least one requirement of Rule 23(b).  The court must conduct a "rigorous analysis" to determine whether Plaintiffs have met their burden.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).

### B.  Individual Issues Predominate and a Class Action is Not Superior.

Plaintiffs contend only that certification is appropriate under Rule 23(b)(3).  Plaintiffs have failed to make either of the two showings required by Rule 23(b)(3):

- **Predominance:** requires that questions of law or fact common to the members of the class predominate over any questions affecting individuals;

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

---

[65] Williams Dep. 53:3-9.
[66] Williams Dep. 55:9-14, 75:12-13.
[67] Williams Dep. 74:24-76:21, 100:23-25.
[68] Williams Dep. 111:22-114:21.
[69] Williams Dep. 55:5-14, 68:1-23, 71:2-19.
[70] Williams Dep. 54:13-14, 56:9-14, 59:13-15, 65:25-66:14, 69:13-70:9, 81:9-82:10, 146:15-147:10; Williams further admits that he did not work any overtime during the time he was completing formal online training. (Williams Dep. 54:13-55:1, 195:2-197:1.)
[71] Williams Dep. 148:19-24, 114:13-18, 85:10-11.
[72] Williams Dep. 75:2-5, 76:7-11, 260:14-261:6.

14

- **Superiority:** requires that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

This Court should deny certification of Plaintiffs' proposed class because Plaintiffs cannot satisfy Rule 23(b)(3). Whether Branch Managers are misclassified as exempt can only be resolved by determining how each individual Branch Manager spent their day.[73] Individual issues therefore predominate over common questions and a class action is not superior to other methods of adjudication.

### 1. Whether the Managerial, Administrative, or Outside Sales Exemptions Apply is a Fact-Intensive Inquiry and Individual Issues Predominate Over Common Questions.

Determining whether an individual meets an exemption is a "fact-intensive inquiry." *In re Wells Fargo Home Mortgage Overtime Litigation*, 571 F.3d 953, 958 (9th Cir. 2009). The Court must "conduct an individualized analysis of the way each employee actually spends his or her time," and "determine how much of that work is exempt." *Vinole*, 571 F.3d at 945; *see also Mendoza v. Home Depot, U.S.A., Inc.*, No. CV 09-058343 SJO (JCx), at 13 (C.D. Cal. Jan. 21, 2010).

Where the relevant duties performed and the time spent on those duties vary among class members, individual issues predominate over common issues. *See In re Wells Fargo Home Mortgage Overtime Litig.*, 2010 WL 174329 (N.D. Cal. Jan. 13, 2010) (denying certification of class of home mortgage consultants where there was evidence of "individual variations [] among job duties and experiences"); *Jimenez v. Domino's Pizza*, 238 F.R.D. 241, 251 (C.D. Cal. 2006) (no predominance of common question where "there were many variable[s] which affected a particular manager's mix of duties"; "the predominating issue in this case is the actual mix of duties worked which entails a need to conduct an individual inquiry for each class member"); *Perry v. U.S. Bank*, 2001 WL 34920473, *7 (N.D. Cal. Oct. 16, 2001) (no predominant common question for proposed class of personal bankers "in light of the

---

[73] That exemptions are an affirmative defense does not absolve Plaintiffs of meeting their burden of proving that a class can be certified. What matters is not whether U.S. Bank will ultimately prevail on the merits of its defenses, but whether the defenses can be adjudicated on a classwide basis. *See In re Wells Fargo Home Mortgage Overtime Pay* Litigation, 2010 WL 174329, *8 (N.D. Cal. Jan. 13, 2010).

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION          CV08-00137 JHN (PJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   differences in individual job duties").[74]

2        In this case, Branch Managers spend various amounts of time on managerial

3   work, including:  supervising and directing the work of two to six employees;

4   planning work and apportioning sales goals among employees; recruiting,

5   interviewing, and hiring talent for their branches; training new employees; providing

6   on-going training to employees; ensuring compliance with federal banking laws and

7   U.S. Bank's operations standards; evaluating employees' performance; goal-setting

8   and coaching for employees; and handling customer and employee issues.[75]  Some

9   Branch Managers are designated Lead or Cluster Managers, which requires them to

10  perform additional management duties that take more time.[76]  To the extent Branch

11  Managers are performing any work that is the same as their subordinates – such as

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

[74] *See also Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 249 (C.D. Cal. 2006) (no predominance of common question where there was "voluminous evidence that there actually was a great deal of variance in [assistant manager] duties"); *Pfohl v. Farmers Ins. Group*, 2004 WL 554834, *9 (C.D. Cal. Mar. 1, 2004) (stating that "[t]he differing job duties and the individualized inquiry to determine whether these varying duties meet the administrative exemption preclude a collective action in this case" and denying class certification of class of insurance adjusters); *Keller v. Tuesday Morning*, 179 Cal.App.4th 1389, 1399 (2009) (affirming decertification of class of store managers where some matters were susceptible to classwide proof (mandated management policies) but others required individual inquiries (time spent performing exempt duties and exercising discretion); *Walsh v. Ikon Office Solutions, Inc.*, 148 Cal.App.4th 1440, 1459 (2007) (denying class certification and noting that "[an] inconsistency in the witnesses' accounts . . . underscores the likelihood that adjudicating [the case] will be best accomplished on an individual basis"); *Dunbar v. Albertson's*, 141 Cal.App.4th 1422, 1431 (2006) (class treatment inappropriate where findings as to one grocery manager could not be extrapolated to 900 other grocery managers due to significant variation in work performed).

[75] Brown Dep. 98:16-99:1; White Dep. 28:22-29:6, 38:12-17, 68:7-70:3; Romero Dep. 71:15-72:5; Garcia Dep. 145:25-146:14, 87:5-12, 60:25-61:12, 41:18-25, 50:1-52:8, 102:15-25, 103:10-25, 63:25-64:14, 64:23-65:20, 83:24-84:11, 151:1-153:8, 153:14-15, 156:19-21, 28:23-25, 59:18-60:23, 66:8-67:12, 90:19-91:1, 46:22-47:13, 70:9-22, 71:11-73:17, 84:12-17, 84:18-23, 86:6-14, 87:5-12, 106:19-107:4; Page Dep. 71:20-24, 79:9-12, 79:25-8:2, 82:10-12, 82:24-83:2, 102:3-103:17, 103:24-104:1, 104:6-7, 104:20-21, 104:22-25, 107:16-18, 109:15-17; Chawla Dep. 96:16-97:21, 106:14-23, 110:9-112:9, 115:25-116:16, 123:1-3, 132:6-133:13; Mckee Dep. 44:6-45:8, 97:23-98:13, 138:25-139:23, 154:15-155:9, 82:10-84:16; Williams Dep. 161:4-7, 162:11-163:11, 187:2-4, 165:1-169:8, 162:1-7, 170:1-172:18, 194:13-20; Spainhower Dep. 283:20-284 16, 289:12-290:25, 276:1-3, 226:3-228:17, 243:2-5; Vladimirsky Dep. 39:18-40:13, 72:21-75:9, 76:3-9, 77:15-78:4, 78:9-23, 54:19-85:13, 123:8-9, 113:12-24, 121:1-123:13, 125:10-12, 83:10-84:7, 129:12-131:18, 110:16-113:11, 39:18-40:14; Cooke Dep. 31:21-25, 41:20-24, 33:5-19, 46:25-47:2, 48:17-49:1, 49:2-56:5, 75:2-10, 78:10-18, 115:2-116:7, 118:4-20, 94:11-95:9, 102:20-103:13, 102:22-114:5, 178:16-20; 185:12-16; Vitug Dec. ¶10; Trimble Dec. ¶7; Gabler Dec. ¶6; Wilkinson Dec. ¶10; Brown Dec. ¶10; Williamson Dec. ¶7; Crall Dec. ¶10; Howie Dec. ¶7; Kerimian Dec. ¶7; Kuni Dec. ¶6; Manansala Dec. ¶11; Groppetti Dec. ¶6; Woolsey Dec. ¶6; Mora Dec. ¶6; Hedayati Dec. ¶6; Hale Dec. ¶9; Thomas Dec. ¶7; Kuhn Dec. ¶9; Dominguez Dec. ¶10; Donahue Dec. ¶7; Baer Dec. ¶10; Ortiz Dec. ¶10; Pavlitskiy Dec. ¶5; Hurst Dec. ¶7; Petrucela Dec. ¶6.

[76] White Dep. 69:21-70:03, 52:01-53:18; White Dep. 86:12-87:11, 89:11-90:9; Romero Dep. 118:1-10; Garcia Dep. 92:3-13; Chawla Dep. 154:1-10, 119:2-11, 119:12-19; Mckee Dep. 120:6-122:14; Hurst Dec. ¶14; Hale Dec. ¶11; Kerimian Dec. ¶17; Howie Dec. ¶4; Vitug Dec. ¶4; Baer Dec. ¶23.

16

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION          CV08-00137 JHN (PJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  working on the teller line or handling transactions – many are simultaneously

2  managing, leading by example, and constantly watching for training opportunities and

3  ensuring compliance with federal banking regulations.[77]

4       Branch Managers also spent varying amounts of time on administrative work,

5  including: running the bank branch like their own business, promoting the bank's

6  services, representing the bank in the community, analyzing issues, and making

7  decisions about the operations of their branch.[78]

8       Branch Managers can also spend varying amounts of time away from branches

9  selling or promoting financial products, including visiting local businesses to learn

10  about their business, determining their banking needs (and their employees' banking

11  needs) in light of their particular business, making decisions about how the bank and

12  its products can facilitate the particular prospect's business, articulating this to the

13  prospect, and making sales including business loans, commercial accounts with

14  certain commercial benefits, lines of credit, and the like.[79]

> To determine whether Branch Managers are exempt, the Court must:
>
> (1) itemize all of the different types of duties;
>
> (2) determine which activities are exempt and which are not;
>
> (3) determine how much time each Branch Manager spent on each activity each week they worked to determine whether more than 50% of each Branch Manager's time is spent on exempt work; and
>
> (4) determine as to any Branch Manager who dropped below the 50% level whether she caused herself to engage in non-exempt duties, whether it was the result of circumstances outside of her control, and whether she met U.S. Bank's expectations.

---

[77] White Dep. 69:21-70:3, 52:1-53:18; Romero Dep. 43:1-23, 108:24-109:7; Garcia Dep. 127:13-128:5, 63:25-64:14, 64:23-65:20; Spainhower Dep. 310:16-19, 319:10-13; Gabler Dec. ¶26; Brown Dec. ¶40; Kerimian Dec. ¶19; Manansala Dec. ¶21; Woolsey Dec. ¶24; Hedayati Dec. ¶25; Ortiz Dec. ¶12; Pavlitskiy Dec. ¶12.

[78] White Dep. 30:14-19, 56:16-57:19; Romero Dep. 70:7-71:14, 97:6-98:10, 106:8-20, 123:10-124:5; Garcia Dep. 28:23-25, 145:25-146:8, 68:10-69:16, 88:20-23, 96:1-20, 104:23-105:15, 106:19-107:4; Page Dep. 64:15-23; Brown Dep. 101:2-102:1, 98:16-99:1; Chawla Dep. 37:24-39:1, 41:16-19, 134:21-135:1, 110:9-112:9; Mckee Dep. 44:6-45:8, 46:4-9, 47:2-8, 97:23-98:13; Watson Dep. 37:17-38:13, 73:2-19, 147:14-150:9, 153:24-154:6; Spainhower Dep. 326:11-14; Vladimirsky Dep. 31:11-19, 68:25-69:2, 101:16-106:1, 125:10-126:16, 144:8-24; Cooke Dep. 185:12-16, 185:17-24; 122:18-20.

[79] White Dep. 116:5-7; Romero Dep. 127:16-128:13, 128:21-129:2, 70:7-71:14; Garcia Dep. 28:23-25, 145:25-146:8, 68:10-69:16, 88:20-23, 96:1-20, 104:23-105:15, 106:19-107:4; Page Dep. 118:6-9; Brown Dep. 101:2-102:1; Watson Dep. 146:22-147:10; Williams Dep. 138:23-140:8; 141:3-142:10; 176:23-177:12; 110:22-114:5, 185:12-16.

17

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Plaintiffs' argument that U.S. Bank cannot rely on multiple exemptions because it is mathematically impossible for Branch Managers to meet more than one exemption was specifically considered and rejected in *In re Wells Fargo*, 2010 WL 174329, where the plaintiff contended that conflicting exemption claims (the outside sales and administrative exemption) made classwide treatment appropriate. *Id.* at *9. The court explained that "plaintiff again misses the point of the predominance requirement" and that plaintiff improperly "assume[d] that in practice all [home mortgage consultants] have the same primary job duty." *Id.* The same is true here. Based on the variances in testimony about the types and amounts of exempt duties Branch Managers are performing, individual Branch Managers might satisfy different exemptions.

An employer has a "fundamental due process right to raise affirmative defenses as to individual plaintiffs." *Mendoza*, No. CV 09-05843 SJO (JCx), at 15 (citations omitted). Courts regularly consider whether different exemptions apply to class members, and find that individualized inquiries are required to determine whether class members qualify for different exemptions. *In re Wells Fargo*, 2010 WL 174329 at *9.[80] Plaintiffs' "Fatal Defect No. 3" argument is itself fatally defective as a matter of law. For all of these reasons, individualized inquiries predominate.

### 2.   Plaintiffs' "Expectations" Arguments Are Not Sufficient.

Plaintiffs apparently do not dispute that inquiring into whether each individual Branch Manager was *actually* performing exempt work requires a fact-intensive, individual analysis. Plaintiffs instead invent a novel theory that the class should be certified because U.S. Bank did not "expect" Branch Managers to be exempt – or, alternatively – because U.S. Bank had "no expectation" as to how Branch Managers spent their time and this "expectation" constitutes the common question

---

[80] Plaintiffs' claim Wage Order 4 prohibits a "combination" exemption. Wage Order 4 nowhere states this. California law is silent as to whether combining exemptions is available. Courts can look to federal law when interpreting California exemptions, where California law is silent (*Bell*, 87 Cal.App.4th at 813) and federal law recognizes combining exemptions (*Intracomm, Inc. v. Bajaj*, 492 F.3d 285, 295 (4th Cir. 1993); *Shockley v. City of Newport News*, 997 F.2d 18, 29 (4th Cir. 1993)).

18

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    predominating over individual issues of what each Branch Manager did every day at

2    work. Plaintiffs' argument is factually inaccurate and mischaracterizes the law.

3            a.    <u>U.S. Bank Expects Branch Managers to Spend the Majority of their Time Performing Exempt Duties.</u>

4          Plaintiffs claim that U.S. Bank does not expect its Branch Managers to be

5    exempt. Plaintiffs are wrong. Witnesses for both parties agree that U.S. Bank tells its

6    Branch Managers to run their branches as if it were their own business.[81] U.S. Bank

7    expected its California Branch Managers to spend more than half of their time

8    performing exempt work, as demonstrated by: (1) the job description – which

9    explicitly states that California managers must spend more than 50% of their time on

10    managerial work; and (2) the written criteria for evaluating Branch Managers'

11    performance – which primarily evaluates performance of managerial duties.[82]

12            b.    <u>Regardless of an Employer's Expectations, if Employees Spend More than 50% of Their Time on Exempt Tasks, They are Exempt.</u>

13          No California state or federal court has *ever* found that employees who actually

14    spend more than 50% of their time on exempt duties are *not* exempt because of the

15    employer's expectations. The Wage Orders state that Courts should consider "first

16    and foremost" *actual job duties* "together with" expectations and the realistic

17    requirements of the job. The purpose of the "expectations" and "realistic

18    requirements" language is to *protect* an employer who has classified an employee as

19    exempt and that employee's performance is falling short of the employer's realistic

20    expectations that the employee perform exempt functions. *See Ramirez*, 20 Cal.4th at

21    802. The "expectation" part of the Wage Order is a failsafe for the employer where

22    the employee is not doing his or her job.[83] There is no support for Plaintiffs'

23    

---

[81] Page Dep. 64:15-23; McKee Dep. 46:4-9, 47:2-8; Hilt Dep. 53:15-22; Watson Dep. 82:17-83:5, 84:3-6, 146:22-147:10, 162:11-19, 162:24-163:4.

[82] White Dep. 82:1-86:2; Garcia Dep. 116:5-117:4; Romero Dep. 97:6-98:10, 106:8-20; Page Dep. 102:3-106:17; Watson Dec. ¶6, Ex. A.

[83] Plaintiffs rely heavily on *Duran v. U.S. Bank*, Alameda Sup. Ct. Case No. 2001-035537 (2008), to support their argument that U.S. Bank's expectations (or the lack thereof) renders Branch Managers per se nonexempt. Yet decisions of California state trial courts "have no precedential value." *Budrow v. Dave & Buster's of California, Inc.*, 171 Cal.App.4th 875, 884 (2009) (declining to take judicial notice of a Superior Court decision). Even if *Duran* had precedential value, it does not hold that an employer must have an expectation about employees who are demonstrably performing exempt work. The trial court conducted a

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   arguments that "expectations" and "realistic requirements" support class certification.

2   Plaintiffs' "Fatal Defect" Nos. 1, 2, and 4 arguments fall flat.

3                    c.       The "Staffing Documents" Are Not a Uniform Policy.

4         The "Staffing Documents" are not a common policy that predominates over the

5   individualized issues of what Branch Managers do on a daily basis.  There is no

6   evidence that these Documents were:  (1) a uniform common policy; (2) ever

7   communicated to Plaintiffs, the Branch Managers or their District Managers; or

8   (3) used by U.S. Bank to dictate how much time a Branch Manager should spend on

9   any task.  Rather, it is undisputed that these "Staffing Documents" are operational

10  business documents.[84]  The vast majority of the Branch Managers have never used

11  these tools.[85]  These tools do not dictate or illustrate what a Branch Manager actually

12  does him or herself.[86]  Plaintiffs admit that U.S. Bank gave little direction to Branch

13  Managers as to how to perform their job.  (Mtn. 14:11-113 ("[b]esides meeting goals,

14  Defendant provides no other expectations for the [Branch Manager] position").

15        There is no common policy that dictates what Branch Managers do, and that

16  predominates over individual issues.  Branch Managers have significant discretion as

17  to how to run their business, schedule their staff, and manage their staff.[87]  Under

18  thorough analysis of whether defendant expected class members to perform exempt work *only after* finding
     that class members did not actually perform more than 50% exempt work.

19  [84] Baisch Depo. 141:22-142:1; Baisch Dec. ¶1-8.

20  [85] Garcia Dep. 55:23-56:11, 141:19-143:8, 143:10-145:3: Spainhower Dep. 273:14-24.
     [86] Even if the Staffing Documents were misconstrued as a uniform policy suggesting Branch Managers spend
     more than half of time on non-exempt duties, such a policy would directly contradict other policies making

21  clear U.S. Bank's expectation that Branch Managers perform exempt duties (e.g., the job description and
     performance reviews for the position).  Many (if not all) Branch Managers were subject to performance

22  reviews. (Chawla Dep. 145:22-25)  But the majority of Branch Managers never used the "Staffing Models."
     (Gabler Dec. ¶ 19; Kerimian Dec. ¶ 14, 20; Wilkinson Dec. ¶ 20; Williamson Dec. ¶ 17; Kuhn Dec. ¶ 26;

23  Woolsey Dec. ¶ 19; Garcia Dep. 55:23-56:1, 141:19-145:3; Mckee Dep. 73:15-74:4; Chawla Dep. 106:24-
     107:10, 108:14-110:5)  U.S. Bank abandoned the "Staffing Models" after the 2007 time studies, and

24  implemented a "Scheduling Tool" that is silent as to how much time should be spent on exempt versus non-
     exempt activities – and which many Branch Managers do not use.  (Baisch Dep. ¶7, Spainhower Dep. 273:14-

25  24).  Thus, at best, Plaintiffs have identified *yet another* individualized inquiry that would require a class
     member-by-class member analysis:  i.e., how were these various documents communicated (if at all) and used

26  (if at all) by each individual Branch Manager.
     [87] Watson Dep. 82:17-83:5, 84:3-6, 146:22-150:9, 162:11-163:4; Garcia Dep. 145:25-146:8; Page Dep. 64:15-

27  23, 119:17-120:9, 120:23-25; Brown Dep. 101:2-102:1, 177:21-201:17, 203:1-212:1; Petrucela Dec. ¶8, 12-
     13, 20, 23; Ortiz Dec. ¶9; Donahue Dec. ¶4, 9, 15; Dominguez Dec. ¶6, 13, 21; Kuhn Dec. ¶5, 12, 21; Thomas

28  Dec. ¶16; Mora Dec. ¶8, 10-12, 18; Woolsey Dec. ¶7, 14; Groppetti Dec. ¶7, 13-15, 20; Kuni Dec. ¶5, 13-14,
     18; Kerimian Dec. ¶10; Howie Dec. ¶11; Brown Dec. ¶14-15, 24, 30; Crall Dec. ¶10, 15; Williamson Dec.
     ¶16-17; Wilkinson Dec. ¶12, 19; Gabler Dec. ¶7, 14, 17; Trimble Dec. ¶9, 21; Vitug Dec. ¶12, 20, 25.

                                                        20

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   similar circumstances, both the Central and Northern Districts have denied class

2   certification in the last month.  *Mendoza*, No. CV 09-05843 SJO (JCx), at 3 (denying

3   class certification "[b]ecause there is no uniform policy or standard operating

4   procedure upon which all [putative class members] rely, it is likely that each [putative

5   class member's] experience is unique"); *In re Wells Fargo*, 2010 WL 174329 at *2

6   (individualized inquiries predominated over how class members spend their day when

7   their employer gave them "a large degree of autonomy in deciding how to shape their

8   individual business practices" and class members "allocate time differently as they

9   gain experience and build skills and client bases").  The Court must reach the same

10   result here.

          d.      The Court Should Not Disregard Evidence of Individualized
11                Issues.

12          Plaintiffs suggest that this Court certify a class and determine liability by

13   *assuming* that each Branch Manager performed only the activities listed on the

14   Staffing Models, that each Branch Manager performed these activities uniformly, and

15   that each spent exactly the same amount of time on each task.  Yet their own

16   witnesses testified that their work varied, and there is no evidence that they

17   themselves performed each of the activities on the Staffing Models, nor that they spent

18   the exact same amount of time on each activity, week after week.[88]  To the contrary,

19   numerous Branch Managers spent the majority of their time performing exempt

20   duties, and their work does not track closely the various tasks in the Staffing Models.[89]

21          The Ninth Circuit recently overturned an order granting certification that

22   certified a class where both a common policy and individualized issues existed

23   simultaneously, finding the district court had abused its discretion.  *In re Wells Fargo*,

24   571 F.3d at 956-59.  Thus, even if Plaintiffs had identified a common policy regarding

25   "expectations" (which they have not), they cannot rely on this policy "to the near

26

27   [88] Garcia Dep. 141:19-143:8, 143:10-145:3, 149:1-10; Page Dep. 119:17-120:9, 120:23-25.

28   [89] Petrucela Dec. ¶6-7; Hurst Dec. ¶10; Pavlitskiy Dec. ¶7-10; Ortiz Dec. ¶10-11; Baer Dec. ¶8, 10; Donahue
     Dec. ¶7; Dominguez Dec. ¶2, 10-11; Kuhn Dec. ¶9-10; Hale Dec. ¶9; Hedayati Dec. ¶6; Mora Dec ¶6-7;
     Groppetti Dec. ¶6; Woolsey Dec. ¶6; Kuni Dec. ¶6; Howie Dec. ¶7-9; Crall Dec. ¶5, 10-16; Williamson Dec.
     ¶10; Brown Dec. ¶10-12; Gabler Dec. ¶6; Trimble Dec. ¶7; Vitug Dec. ¶10-11.

                                                      21

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION          CV08-00137 JHN (PJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  exclusion of other factors relevant to the predominance inquiry" and "disregard[] the

2  existence of other potential individual issues that make class treatment difficult if not

3  impossible." *Id.* at 958-59; *see also Campbell v. Pricewaterhouse Cooper*, 602

4  F.Supp. 2d 1163, 1182-83 (E.D. Cal. 2009) ("an employer's realistic expectations are

5  'likely to prove susceptible to common proof,' but how employees actually spend

6  their time 'has the potential to generate individual issues'"). On remand, the district

7  court further acknowledged that it was required to factor the individualized inquiries

8  created by the employer's exemption defenses:

9  • the "court must consider the full range of factors presented by the issues in
   this case when determining whether issues common to the class would
10    predominate over individualized inquiries";

11  • "[s]imply because the plaintiff may be able to establish the prima facie case
   using some form of common proof does not mean the defendant is limited to
12    common proof when asserting relevant defenses"; and

13  • "if an employer asserts an exemption as a defense and the inquiry into
   whether the individual class members qualify for that exemption is fact-
   intensive, the district court must weigh the complexity of that inquiry in the
14    predominance analysis."

15  The Court therefore denied class certification even though "[a]ll class members had

16  common job descriptions, uniform training, the same primary goal (to sell mortgages),

17  *uniform job expectations*, similar compensation plans, and standardized employee

18  evaluations." *In re Wells Fargo*, 2010 WL 174329 at *7 (emphasis added).

19      Plaintiffs here have not proposed a form of common proof that absolves the

20  Court from asking how each Branch Manager spent their working time. Because

21  many Branch Managers – including Plaintiffs' own witnesses – are not even aware of

22  the Staffing Documents, this alleged "policy" does not change an individual issue into

23  a common one. The Court must still ask what each Branch Manager did at work and

24  how long each exempt duty took. Plaintiffs have failed to meet their burden of

25  showing that common issues predominate under Rule 23(b)(3).

26  **3.    Neither a Meal Period Class nor a Rest Period Class Can Be
       Certified Because Individual Inquiries Predominate.**

27      Plaintiffs omit any discussion about the certifiability of meal and rest period

28  claims, other than stating that "Plaintiffs did not get meal and rest breaks." There is

22

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  no evidence that U.S. Bank had a common policy to "not provide" meal and rest

2  periods to Branch Managers.  Many Branch Managers – including some of Plaintiffs'

3  own witnesses – admit that meal and rest periods were available and/or that they did

4  take them at least sometimes.[90]  *None* of Plaintiffs' declarants stated that they were

5  prevented from taking rest periods.  Based on this evidence, Branch Managers were

6  aware that they could take meal and rest periods.  Thus, even if the Court were to

7  conclude that Branch Managers were non-exempt and therefore U.S. Bank had a duty

8  to provide meal or rest periods[91], the Court would have to engage in a further fact-

9  intensive inquiry with respect to:  (1) which Branch Managers did not take meal

10  periods; (2) whether the meal period was less than 30 minutes; (3) whether Branch

11  Managers waived the meal period, as permitted by law; and (4) whether the Branch

12  Managers did not take a legally compliant meal period because U.S. Bank prevented it

13  or because they each chose not to take one.  The Court must then conduct the same

14  analyses with respect to rest periods for each Branch Manager.  Numerous courts have

15  denied certification under similar circumstances.  *See Hostetter v. Barnes & Noble*,

16  CV 09-1572-VBF (SSx) (C.D. Cal. Jan. 25, 2010).[92]

17  **4.    Plaintiffs Cannot Demonstrate Superiority under Rule 23(b)(3).**

18  For the same reasons that predominance is not satisfied, Plaintiffs cannot satisfy

19  the superiority requirement.  *Basco v. Wal-Mart Stores, Inc.,* 216 F.Supp.2d 592, 604

20  (E.D. La. 2002).  Adjudicating each Branch Manager's claims would require a mini-

21  trial, such that a classwide trial would be wholly unmanageable.  An employer's "right

22  to raise affirmative defenses as to individual [] plaintiffs in conjunction with the

23  individual nature of damages in this case makes it difficult to see how class

24

25  [90] Garcia Dep. 117:13-20, 118:25-119:8, 119:21-120:1; Chawla Dep. 145:22-25; Vitug Dec. ¶40-44; Trimble Dec. ¶38-39; Gabler Dec. ¶33-36; Wilkinson Dec. ¶35; Brown Dec. ¶45-49; Crall Dec. ¶9; Howie Dec. ¶38-41; Kuni Dec. ¶20; Groppetti Dec. ¶28-30; Woolsey Dec. ¶28-31; Mora Dec. ¶32-34; Hedayati Dec. ¶29-31;
26  Hale Dec. ¶38-39; Kuhn Dec. ¶36; Dominguez Dec. ¶36; Donahue Dec. ¶31-34; Ortiz Dec. ¶26; Petrucela Dec. ¶32.
27  [91] Individuals who meet any of the exemptions in IWC Wage Order 4-2001 are exempt from meal and rest period requirements under §§11 and 12 of the Order.  *Id.* at § 1(A).
28  [92] *See also Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008); *Brown v.FedEx Corp.*, 249 F.R.D. 580,587 (C.D. Cal. 2008); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 468 (S.D. Cal. 2007); *Lanzarone v. Guardsmark*, 2006 WL 4393465, *4 (C.D. Cal. Sept. 7, 2006).

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**          CV08-00137 JHN (PJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  certification would substantially benefit the court." *Mendoza*, No. CV 09-05843 SJO

2  (JCx), at 15 (citation omitted).  That is particularly true here since U.S. Bank gives

3  Branch Managers autonomy in deciding how to manage their branches, which means

4  the Court would have to look at what each Branch Manager did on a weekly basis to

5  adjudicate the various exemption defenses as to each.  *See In re Wells Fargo*, 2010

6  WL 174329 at *2.

7      *Duran* – a case with *no* precedential value – does not change the result.

8  Plaintiffs fail to "recognize that representative testimony is typically only allowed in

9  the unpaid overtime context to establish the number of hours employees worked and

10  the amount they were paid, not whether a class of employees was exempt from the

11  overtime law's coverage." *In re Wells Fargo*, 2010 WL 174329 at *8.  Because there

12  are no means of common proof in adjudicating U.S. Bank's exemption defenses, a

13  class action trial is not superior and – instead – would be unreasonably burdensome,

14  costly, and time-consuming for both the Court and the litigants.[93]

15  **C.**   **Plaintiffs Fail to Satisfy the Commonality and Typicality Requirements.**

16      Plaintiffs cannot establish the commonality requirement of Rule 23(a) for the

17  same reason that predominance fails.[94]

18      Nor can Plaintiffs establish the typicality requirement of Rule 23(a).  A

19  plaintiff's claim is typical if it "arises from the same event or course of conduct that

---

[93] It is not "cost prohibitive" for individuals to pursue wage claims.  The availability of legal fees for Labor Code violations means that individuals can afford to bring claims privately through counsel.  Individuals could also bring claims without the assistance of counsel, through proceedings with the Department of Labor Standards Enforcement in their hometowns.  The DLSE administrative hearing option "is conducted 'in an informal setting preserving the right[s] of the parties' and 'is designed to provide a speedy, informal, and affordable method of resolving wage claims." *Lolley v. Campbell*, 28 Cal.4th 367, 372 (2002).  A DLSE hearing "can be a quick procedure ... and does present a viable alternative [to class certification]." *Jimenez*, 238 F.R.D. at 253-54; *see also Maddock v. KB Homes*, 248 F.R.D. 229 (C.D. Cal. 2007) (denying Plaintiffs' request for certification because adequate alternatives exist and Plaintiffs did not show that there were plausible classwide methods of proof available to prove their claims).

[94] If predominance fails, so does commonality.  The commonality requirement of Rule 23(a) serves as a "guidepost[] for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158 (1982).  Rule 23(a)'s commonality requirement may be satisfied by "the alleged existence of common discriminatory practices." *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Here, Plaintiffs have no evidence of a common policy to misclassify Branch Managers as exempt, or to deny them meal and rest periods.

24

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  gives rise to claims of other class members and the claims are based on the same legal

2  theory." *Weinberger v. Thornton,* 114 F.R.D. 599, 603 (S.D. Cal. 1986).[95]  Where, as

3  here, there are "innumerable variations" in the putative class members' experiences,

4  then "there is no 'typical' claim or experience, certainly not Plaintiff's experience, that

5  can be extrapolated classwide." *Sanchez v. Wal Mart Stores, Inc.,* 2009 WL 1514435,

6  *3 (E.D. Cal. May 28, 2009).  Both named Plaintiffs testified they did not perform

7  exempt duties that several other putative class members did perform.[96]  Additionally,

8  Plaintiff Williams testified that he held a unique position – "Floating In-Store Branch

9  Manager" – and did not manage his own bank branch.[97]  Every other Branch Manager

10  who submitted testimony in support of either party's brief managed his or her own

11  branch; some even had responsibility for more than one branch.[98]  These

12  circumstances render the named Plaintiffs' claim of misclassification "atypical" of

13  those they seek to represent.  Plaintiffs have failed to meet the commonality and

14  typicality requirement of Rule 23(a), and their motion to certify the class should be

15  denied.

## V.   CONCLUSION

16  
17       Plaintiffs have failed to meet their burden of proof under Rule 23, and the Court

18  should deny their motion for class certification should be denied.

19

20  Dated: February 8, 2010                          WINSTON & STRAWN LLP

21

22                                                   By:        /s/
23                                                        Joan B. Tucker Fife
                                                         Attorneys for Defendants
24                                                       U.S. BANK NATIONAL
                                                         ASSOCIATION and U.S.
25                                                       BANCORP

26

---

27  [95] *Accord Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982).

28  [96] Williams Dep. 111:22-114:21; Spainhower Dep. 314:3-22, 307:11-14, 307:18-308:19, 311:3-8.
[97] Williams Dep. 75:2-5, 76:7-11, 260:14-261:6.
[98] Garcia Dep. 59:18-60:23, 66:8-67:12, 145:25-146:8; Romero Dep. 40:4-6; Page Dep. 71:20-24.

25