# EXHIBIT 38

# SPAINHOWER v. U.S. BANK
## PLAINTIFFS' MISCHARACTERIZATIONS OF EVIDENCE

| Mischaracterization/Source | Deposition Citation | Actual Quote |
|---|---|---|
| "Through its computers, Defendant's Department of Retail Staffing & Incentives ("RSI") gathers transaction data to forecast to the minute the branches' labor needs."<br><br>Plaintiffs' P&A ISO Motion for Class Certification 8:10-12 | Baisch 12:22-13:12, 14:4-17, 15:5-10. | Baisch Deposition Testimony: States nothing about "forecasting to the minute" |
| "All of the in-store branches appear to be nearly identical. They all have the same policies and procedures."<br><br>Plaintiffs' P&A ISO Motion for Class Certification 8:14-15 | Tellado 28:7-14. | "**Q.** Are the policies and procedures as far as banking is concerned, for instance, opening accounts, making loans, taking deposits, are they different from branch to branch in the Greater Bay District or are they the same in each branch? **A.** Within our district I believe they are the same. **Q.** Are they the same with those that you used when you worked in Oregon and Washington? **A.** No." |
| "Defendant considers Co-Managers to be almost equal to the IBM, *i.e.*, they have "equal stature in terms of supervising, scheduling, being able to conduct disciplinary investigations" and they have the same authority limits."<br><br>Plaintiffs' P&A ISO Motion for Class Certification 10:7-10 | Brown 151:20-154:13. | Brown Deposition Testimony: "**Q.** Is there someone else at the branch of equal stature to the in-store branch manager? **A.** The co-manager in the branches would be of, I guess, equal stature in terms of supervising, scheduling, being able to conduct disciplinary investigations, conferring with HR about, you know, next steps. **Q.** Is that true even for more experienced in-store branch managers, that a co-manager has equal stature in those areas -- scheduling, supervising, conducting disciplinary investigations? **A.** Well, I think the manager and co-manager, you know, would have to work together within the branch. But there are just those times where the manager's not there, just like the times a co-manager's not there, where the schedule still needs to be done, the exceptions still need to be approved. So that's where I would say they have some similar, if not equal, responsibilities." |

-1-

| | | |
|---|---|---|
| "Defendant does not require these employees to receive training before starting in the IBM job."<br><br>Plaintiffs' P&A ISO Motion for Class Certification 10:15-16 | Brown 167:19-169:12;<br><br>Watson 119:3-121:3;<br><br>Williams 85:12-25. | Brown Deposition Testimony: "**Q.** Now we talked earlier about people being hired to become in-store bank branch managers with no previous banking experience. Are you aware of any type of training these people would receive before taking their position? **A.** No. Once they're signed on as a manager, they're in the position. **Q.** Could you read the answer back? **Q.** Oh. Before they sign on as a manager, are you aware of whether or not U.S. Bank offers them any training. **A.** We wouldn't offer any training until they were an employee . . . . You know, the first day on the job could be, you know, showing up their first day in training. The first day on the job would be showing up at the branch. The first day on the job could be showing up at another branch. There's not one set way that it's done."<br><br>Watson Deposition Testimony: "**A.** What I'm saying is a branch manager is hired in and then also at the same time their training track starts, but it could be they attend one set of training classes for a week and then they might be in their branch for a week until the next session is available to be scheduled and/or they can get into the next session. So it could be that -- and then there's also web-based training, not just classroom training . . . . They can take that sporadically in between the classroom training, but they're already functioning as a branch manager or they're already in a branch possibly. So it all kind of happens all around the same time. And when you say learning on the job, to me that just means they're in the location and the only way that they're learning is based on the experiences that they're having in that location. And that's not necessarily the case . . . . Like I said, they could be in there taking web-based training, they're attending classroom training in and around the time they're in the branch."<br><br>Williams Deposition Testimony: "**A.** In my branches, the majority of the people trained me as I was going along. Even though I was the branch manager on duty, I would still be getting training from the senior bankers or the bankers in the locations. **Q.** What sorts of training did you believe you were getting from them? **A.** Proper ways to open the checking accounts, savings accounts, the money markets, the CD's. **Q.** Is this because you had not worked in banking before? **A.** Yes." |
| "Most IBMs are salaried, but Defendant pays IBMs employed through the acquisition of Downey Savings & Loan on an hourly, nonexempt basis, and these nonexempt IBMs perform the same job duties | Brown 161:1-167:11 | Nothing suggests that Downey Managers perform the same job duties as U.S. Bank In-Store Branch Managers.<br><br>Brown Deposition Testimony: "**Q.** Do you have any Downey |

-2-

| | | |
|---|---|---|
| as salaried IBMs." <br><br> Plaintiffs' P&A ISO Motion for Class Certification 10:18-20. | | Savings and Loan in-store branches in your area of California right now? **A.** Yes, I do. . . . **Q.** Is the assignment of duties presently to the Downey Savings and Loan -- strike that. I just figured out a phrase that's better. Do those in-store bank branch managers who are employed through acquisition of Downey Savings and Loan, are they given any different duties than the other in-store bank branch managers at U.S. Bank? . . . **A.** Yes, they are. **Q.** Okay. And what are they given to do? . . . . <br> **A.** They have a development plan, which would include introducing them to all U.S. Bank products and services. They have a development plan which would introduce them to understanding financials. They have a development plan that would introduce them to various investment guides or learning modules that are available to branch managers. . . . **Q.** Do you know why they're on these development plans? . . . **A.** They're on the development plans to insure that they have a strong foundational knowledge to be successful in U.S. Bank. **Q.** Are there any plans to make them salaried? . . . **A.** At some point in the future. |

## PLAINTIFFS' STATEMENTS OF "FACT" WITH NO EVIDENTIARY SUPPORT

| | | |
|---|---|---|
| "Branch standardization permits Defendant to calculate the time of all duties required to conduct the branch's business, including the time for administration and supervision – exempt work." <br><br> Plaintiffs' P&A ISO Motion for Class Certification 8:20-22 | No evidence provided | Not applicable |
| "Defendant generates its FTE figures by calculating the minutes required to perform all tasks in the branch including administration, sales and management. Before implementing its FTE concept companywide, Defendant intensely studied the length and frequency of the tasks in its branches." | No evidence provided | Not applicable |

| | | |
|---|---|---|
| Plaintiffs' P&A ISO Motion for Class Certification 9:1-4 | No evidence provided | Not applicable |
| "Using the time standards, Defendant's 'staffing model' calculates the time for each in-store branch's labor needs. The staffing model multiplies the time standards by the average number of branch transactions or tasks. For example, the time standard for 'deposits' is one minute, and Plaintiff Spainhower's Nohl Ranch Vons Branch averaged 481.7 deposits per month." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 9:11-13 | No evidence provided | Not applicable |
| "Defendant treats all in-store branch employees as nonexempt except for the salaried IBMs." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 10:21-22 | No evidence provided | Not applicable |
| "The IBM position requires more than 40 hours per week." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 10:27 | No evidence provided | Not applicable |
| "The IBMs perform both exempt and nonexempt work though the parties cannot agree on what IBMs do most of the time." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 11:4-5 | No evidence provided | Not applicable |
| "Defendant's staffing models and time standards show that the IBMs perform less than 50% of their time on exempt administrative or executive work." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 11:14-15 | No evidence provided | Not applicable |
| "For this time period and branch, that is as good as it gets." (Referring to "Plaintiff Spainhower's branch required only 14.4 hours a week, i.e., 36% of a 40 hour week.") | | |

| | | |
|---|---|---|
| Plaintiffs' P&A ISO Motion for Class Certification 11:20-21 | | |
| "The other three staffing models calculate a similar percentage of exempt time required to run a branch." | No evidence provided | Not applicable |
| Plaintiffs' P&A ISO Motion for Class Certification 12:2-3 | | |
| "Defendant requires the IBMs to ensure that their in-store branch meets sales and revenue goals." | No evidence provided | Not applicable |
| Plaintiffs' P&A ISO Motion for Class Certification 12:8-9 | | |
| "Typically, Districts require a conference call with all the IBMs in the morning." | No evidence provided | Not applicable |
| Plaintiffs' P&A ISO Motion for Class Certification 12:25-27 | | |
| "Likely, this number has grown by approximately 25% (73 people) since then. The class can be ascertained because Defendant has the names and addresses of their IBMs in their records." (Referring to "Defendant had employed 293 people as IBM's since September 13, 2003.") | No evidence provided | Not applicable |
| Plaintiffs' P&A ISO Motion for Class Certification 13:16-18 | | |
| "If the Court tried individually all of the IBMs' cases, the Court would receive the same evidence of Defendant's expectations." | No evidence provided | Not applicable |
| Plaintiffs' P&A ISO Motion for Class Certification 14:3-6 | | |
| "IBMs 'owning' the branch philosophy cannot, and purportedly did not, impose any expectation on the IBMs concerning such things as work time and what they are supposed to do." | No evidence provided | Not applicable |
| Plaintiffs' P&A ISO Motion for Class Certification 15:11-13 | | |
| "Plaintiffs believe that Defendant expects IBMs to | No evidence provided | Not applicable |

-5-

| | | |
|---|---|---|
| spend most of their time in nonexempt sales work." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 15:18-19 | No evidence provided | Not applicable |
| "As long as Cooke achieved his branch's goals, his work activities and hours met Defendant's expectations." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 16:9-10 | No evidence provided | Not applicable |
| "Before and during class period, Defendant intensely studied the length of and frequency of tasks performed in the in-store branches." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 16:12-13 | No evidence provided | Not applicable |
| "These time studies contain Defendant's unvarnished observations on what the IBMs did at work and what they should be doing." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 16:15:17 | No evidence provided | Not applicable |
| "Defendant's use of the time standards and staffing models in its operations show that the models accurately depict what work occurs at the in-store branches. After using the conclusions for staffing models for years, in 2007, Defendant invested more in them." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 16:22-23 | No evidence provided | Not applicable |
| "Defendant did not expect the IBMs to be exempt." | | |
| Plaintiffs' P&A ISO Motion for Class Certification 20:8-9 | No evidence provided | Not applicable |
| "The realistic requirements of the IBM job do not require a majority of exempt work. Since Defendant gave the IBMs the discretion to perform over half nonexempt work, the in-store branches do not require them to perform mostly exempt work. | No evidence provided | Not applicable |

-6-

| | | |
|---|---|---|
| Otherwise, Defendant would forbid the nonexempt work. Secondly, Defendant's staffing models show that the exempt work required by in-store branches took and should take only 15% to 25% of a full-time employee's work week." Plaintiffs' P&A ISO Motion for Class Certification 20:16-19 | | |
| "Defendant has no expectation for the IBMs on how much time they should work. Defendant permits class members to work as hard as they want or as little as they want, and this expectation dooms Defendant's exemption defenses." Plaintiffs' P&A ISO Motion for Class Certification 22:5-6 | No evidence provided | Not applicable |
| "Defendant has no such expectation. (Referring to how much time IBMs should work.)" Plaintiffs' P&A ISO Motion for Class Certification 22:12 | No evidence provided | Not applicable |
| "*Countrywide* and *Wells Fargo* differ from the present case because the employers expected the class members to be exempt. The *Countrywide* and *Wells Fargo* plaintiffs advanced only a theory of liability based on the putative class performing mostly nonexempt work. In our case, Defendant has no exempt expectation and Plaintiffs contend that therefore its exemption defenses will fail notwithstanding evidence of duties engaged in by the class members. In any event, Defendant's time studies and staffing models show this argument to be theoretical. Defendant's staffing information reflects workplace realities; at the request of Robert Brown, Defendant used this data to determine whether it complied with California's overtime laws." Plaintiffs' P&A ISO Motion for Class Certification 23:4-13 | No evidence provided | Not applicable |
| "Based upon that evidence, the court found liability. | No evidence provided | Not applicable |

-7-

| | | |
|---|---|---|
| *Duran* is the only way a trial could proceed, but it illustrates that a trial of this case could be effectively managed by the Court." Plaintiffs' P&A ISO Motion for Class Certification 23:20-22 | | |
| "Rule 23 looks at efficiency of trial, uniformity in decisions, and procedural fairness to the parties and class members. Defendant's exemption defenses can be disposed of with the same evidence of expectations and requirements." Plaintiffs' P&A ISO Motion for Class Certification 23:23-25 | No evidence provided | Not applicable |
| "Procedural unfairness arises if the parties are prevented from presenting their best evidence and arguments at trial." Plaintiffs' P&A ISO Motion for Class Certification 23:27-28 | No evidence provided | Not applicable |

-8-